# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

STEVEN S. BROWN,

        Petitioner,

v.

EDWIN C. VOORHIES,

        Respondent.

CASE NO. 2:07-cv-00014
JUDGE SARGUS
MAGISTRATE JUDGE KING

## OPINION AND ORDER

On March 10, 2008, the Magistrate Judge issued a *Report and Recommendation* recommending that the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254 be dismissed as unexhausted unless petitioner deleted his unexhausted claims from the petition and proceeded on his remaining exhausted claims. Petitioner has filed objections to the Magistrate Judge's *Report and Recommendation.* For the reasons that follow, petitioner's objections are **OVERRULED**. The *Report and Recommendation* is **ADOPTED** and **AFFIRMED**. Petitioner's motion to amend the petition to delete unexhausted claims, Doc. No. 42, is **GRANTED**. His request for an evidentiary hearing, Doc. No. 45, is **DENIED.** His request to expand the record to include a videotape allegedly depicting his torture by prison officials, Doc. No. 47, is **GRANTED.** For the reasons that follow, this action hereby is **DISMISSED.**

## REQUEST TO EXPAND THE RECORD

Petitioner has filed a request to expand the record to include copies of a videotape that he has manually filed, allegedly depicting torture by prison officials that eventually

resulted in petitioner's guilty plea. Doc. Nos. 44, 46-47, 49. Respondent opposes petitioner's request on the basis that petitioner's claim that his guilty plea was coerced is procedurally defaulted. *See* Doc. No. 48. However, the videotape submitted by petitioner arguably also relates to his gateway claim of actual innocence, which must be considered in determining whether petitioner's claims may be procedurally defaulted. *See Souter v. Jones*, 395 F.3d 577, 589-90 (6th Cir. 2005). The Court therefore **GRANTS** petitioner's request to expand the record, Doc. No. 47, with the videotape that he has manually filed.

## OBJECTIONS

Petitioner objects to the Magistrate Judge's denial of his request for discovery and access to the courts. He also objects to the factual findings of the Ohio Tenth District Court of Appeals reflected in *State v. Brown*, 2002 WL 1163760 (Ohio App. 10th Dist. June 4, 2002). Petitioner again argues that he is actually innocent of the charges against him, that he acted in self defense and that he had no intent to kill. He also raises all the same arguments he previously presented.

Pursuant to 28 U.S.C. 636(b), this Court has conducted a *de novo* review of the Magistrate Judge's *Report and Recommendation*. This Court has carefully considered the entire record. Factual findings of the state appellate court are presumed to be correct. 28 U.S.C. 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Petitioner has failed to meet this standard here. The findings of fact referred to in the Magistrate Judge's *Report and Recommendation,* pp. 2-4, Doc. No. 35, were made by the Ohio Court of Appeals when it reversed petitioner's convictions. *See State v. Brown,* 2002 WL 1163760 (Ohio App. 10th Dist. June 4, 2002). Petitioner was subsequently convicted pursuant to his guilty plea, which constitutes an admission of guilt to the charges alleged. *See McCarthy v. United States,* 394 U.S. 459, 466 (1969). At the time of petitioner's guilty plea, the prosecutor summarized the facts of the case as follows:

> March 12, year 2000, Irv Miller was at his home on Montrose Avenue here in Franklin County, Ohio. At approximately 4:48 p.m. he was found in that house by his cousin. He was laying on the floor, and he was dead.
>
> He remained there while Bexley police arrived, and BCI & I came to investigate the scene. Steve Brown was developed as a suspect as a result of a number of things. He was linked to the scene based on DNA as well as his footprint.
>
> After the incident involving Irv Miller, he left with Mr. Miller's Jeep, had someone sell his golf clubs, and barricaded himself in a home in Columbus.
>
> Mr. Miller died as a result of injuries caused at his house that day, including a number of stab wounds, at least one of which went into his carotid artery and caused his death.
>
> ... [T]his happened... in Franklin County, Ohio.
>
> [Defense counsel]: ... [J]ust one exception about the golf clubs. Mr. Brown has disputed the golf clubs. As his advisory counsel, he will object to that portion of the facts....
>
> ***
>
> DEFENDANT: I didn't even know they were in there, and then I had no intention of stealing anything from Irv, you know....

*Exhibit 11 to Return of Writ, Transcript, Guilty Plea*, at 20-22.

> COURT: Mr. Brown, what is your plea to one count of involuntary manslaughter and one count of aggravated robbery, both felonies of the first degree?
>
> DEFENDANT: I'm guilty.

*Id.*, at 22.

> [Defendant]: ... I caused the anger that Irv went into a rage, and I told the truth the whole time about what happened. I never intended on killing Irv. I never went there to rob him.
>
> The taking of the car was just a – I was freaked out, you know, and my intention was to go kill myself.... I feel that I caused Irv to go into a rage.
>
> I feel that I caused the whole thing and that I have legal culpability to some respect for that.
>
> The robbery was not intended to deprive anybody of anything. It was just I couldn't stay there....
>
> I can make all the excuses in the world....
>
> I intend to try to – try to do good, you know, to make up for what happened, you know.
>
> I know I can never make up for it, you know. I miss my friend. He was my friend. He was my best friend and my best man at my wedding. I miss him.

*Id.*, at 23-25. Petitioner's objections to the state court's factual findings in this matter are

**OVERRULED**.

Upon review of the record and for the reasons detailed in the Magistrate Judge's

*Report and Recommendation*, this Court agrees that neither petitioner's request for discovery

nor his request for access to the courts are warranted in these proceedings. The remainder

4

of petitioner's objections likewise are **OVERRULED.** The *Report and Recommendation* is **ADOPTED** and **AFFIRMED.**

Petitioner's request to delete his unexhausted claims from the petition, *see Objections*; Doc. No. 42, is **GRANTED.** This Court will proceed to consider petitioner's remaining exhausted claims.

## FACTS AND PROCEDURAL HISTORY

The facts and procedural history of this case are outlined in the Magistrate Judge's *Report and Recommendation*, Doc. No. 35, but are repeated here. The Ohio Tenth District Court of Appeals summarized the facts of this case as follows:

> Defendant, Steven S. Brown, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of one count of aggravated robbery and two counts of aggravated murder.
>
> On March 12, 2000, at about 4:00 p.m., Howard Wolman drove to meet his cousin, Irv Miller, at his home. When Wolman arrived, he noticed that the side door of Miller's house was unlocked. In light of this unusual discovery, Wolman walked inside and found Miller [lying] on the floor. Miller's body and the surrounding area were soaked with blood. Wolman immediately ran to a neighbor's home where police and emergency medical personnel were summoned. Miller was pronounced dead at the scene.
>
> During the course of their investigation, police discovered that Miller's home had been robbed and that his Jeep Cherokee was missing. Later that same day, Eric Miller, who is not related to the decedent, observed the defendant, Steven S. Brown, park Irv Miller's Jeep in an alley behind an abandoned house next to his at 423 St. Clair Avenue. Eric Miller paid special attention to the defendant because "nobody is supposed to be there * * *." (Tr. Vol.VIII, p. 65.)

At trial, Eric Miller testified that upon being noticed, the defendant approached and claimed that he had locked his keys in his Jeep. Defendant asked Miller if he had a coat hanger. Miller replied that he did not, and the defendant left and went inside the abandoned home. A short while later, Miller watched the defendant smash one of the Jeep's windows. When approached by the police, Miller picked the defendant from a photographic array, a fact he confirmed at trial.

David Mayo, a friend of the defendant, testified at trial that he met the defendant in an alley off of St. Clair Avenue between three and four o'clock on the day of the murder and that the defendant removed a set of golf clubs from Miller's Jeep. According to Mayo, the defendant told him that he needed money, gave him the clubs, and asked Mayo to sell them for him. Mayo took the clubs and put them in his basement. At trial, he testified that he later called the police and returned the clubs.

Detectives located Miller's stolen Jeep shortly after receiving information that the defendant had parked it off of St. Clair Avenue. After recovering the vehicle, the police cornered the defendant in the abandoned house. He was ultimately taken into custody and was transported to Grant Hospital for treatment of a few minor injuries. While at the hospital, detectives collected physical evidence from the defendant, including clothing, shoes, and blood.

The defendant was interviewed by police at the hospital; however, at that time he denied any knowledge or involvement in causing Miller's death. Nevertheless, he was very curious about the details of the crime, and asked what evidence the police had against him.

At his own request, defendant was re-interviewed a few days later while incarcerated in the Franklin County Jail. The detective who first interviewed the defendant was present, as was Officer Brian Holbrook, who is related to the defendant by marriage. During the course of the second interview, defendant admitted that he walked to Miller's home on the day of Miller's murder, and was allowed to enter. According to the defendant, he told Miller that he had just been released from

the Maryhaven treatment center, and asked if he could borrow twenty dollars. The two purportedly began to argue about the defendant's drug abuse and theft. Defendant admitted that during that argument he fabricated an accusation that Miller had sexually abused his daughter. At that point, defendant claims that Miller picked up two kitchen knives and came toward him. Defendant then claimed that Miller was "somehow" killed during the struggle which ensued. The defendant explained that after Miller had been killed, he took the knives and placed them in the kitchen sink. He then searched Miller's home for money and the keys to his automobile. Finding both, he fled the scene and went into hiding in an abandoned house.

At the crime scene, officers found two knives in the kitchen sink, as well as a knife handle and broken blade on the kitchen floor. All were covered with Miller's blood. An examination of Miller's body revealed that he had been stabbed at least ten times and that two of those stab wounds could have independently caused his death. Specifically, Miller had a six-inch stab wound in the middle of his neck which entered from the front of the neck, severed his esophagus, larynx, and left carotid artery. He also suffered a five-inch stab wound to his chest which punctured his left lung. In addition to these major stab wounds, Miller suffered a three-inch stab wound in his back which punctured a kidney, several smaller stab wounds, four incised wounds, two lacerations, and multiple abrasions. Small quantities of the defendant's blood were found in the kitchen, an upstairs bathroom, in the master bedroom, and on an office drawer. Finally, defendant's footprints were found in Miller's blood in the kitchen.

On March 22, 2000, defendant was charged with one count of aggravated robbery and two counts of aggravated murder. Each count of aggravated murder contained a death specification.

*State v. Brown*, 2002 WL 1163760 (Ohio App. 10 Dist. June 4, 2002). On June 4, 2002, the

appellate court reversed the judgment of the trial court, sustaining petitioner's claims that

the trial court had improperly refused to appoint new counsel or grant his request for a

continuance. *Id.*

> On March 28, 2005, defendant, appearing *pro se* with the assistance of advisory counsel, pled guilty to one count of the stipulated lesser-included offense of involuntary manslaughter without specification and one count of aggravated robbery. Upon application of plaintiff-appellee, State of Ohio, and for good cause shown, the trial court ordered a *nolle prosequi* to the second aggravated murder count. Pursuant to a joint sentencing recommendation, the trial court imposed a prison sentence of ten years on each count, to be served consecutively.

*State v. Brown*, 2006 WL 225524 (Ohio App. 10 Dist. January 31, 2006); *see also Exhibits 12 and 13 to Return of Writ.* Represented by the Franklin County Public Defender as new counsel, petitioner filed a timely appeal. He asserted the following assignment of error:

> THE TRIAL COURT ERRED BY ENTERING JUDGMENT OF CONVICTION AND AN AGREED SENTENCE TO MAXIMUM CONSECUTIVE TERMS BASED UPON A GUILTY PLEA THAT WAS NOT KNOWING, INTELLIGENT AND VOLUNTARY.

*See id.*[1] On January 31, 2006, the Ohio Court of Appeals affirmed the trial court's judgment.

*Id.* Still represented by the Franklin County Public Defender, petitioner filed a timely appeal to the Ohio Supreme Court. He raised the following propositions of law:

> 1. Because R.C. 2929.14(B) and (C) and 2929.19(B)(2) require judicial factfinding before imposition of a sentence greater than the maximum term authorized by a jury verdict or admission of the defendant they are unconstitutional....

---

[1] On May 13, 2005, petitioner filed a motion for transcripts at state expense. Doc. No. 42. On August 24, 2005, petitioner filed a motion for the appointment of alternative counsel, for leave to file supplemental brief, and for a complete copy of the record at state expense. The appellate court denied all of those motions. *See* Doc. Nos. 39, 41.

2. Because R.C. 2929.14(E)(4) and 2929.41(A) require judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant before the imposition of consecutive sentences, they are unconstitutional....

3. Defendants who have been tried, convicted, and sentenced pursuant to Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136 are entitled to the benefit of the statutory presumptions in favor of minimum, non-consecutive sentences not withstanding this Court's decision in *State v. Foster* – Ohio St.3d –, 2006 Ohio 856. Retrospective application of the *Foster* holding would violate the due process protections of the Fifth and Fourteenth Amendments and the Ex Post Facto Clause of Article I, Section 10 of the United States Constitution.

*Exhibit 19 to Return of Writ.* On June 7, 2006, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

*Exhibit 21 to Return of Writ.*

Meanwhile,

[o]n August 3, 2005, appellant filed in the trial court a *pro se* motion to withdraw his guilty plea. The trial court denied appellant's motion without an evidentiary hearing. Appellant appealed that denial ... and presents the following assignment of error:

Did the trial Court Abuse [its] d[i]scretion when it Denied Appellant['s] Motion to Withdraw his plea in violation of his Constitutional Right to Due Process of Law, the 14th Amendment of the Constitution, the 5th, 1st, and 8th Amendment, Article I, Section 16 of the Ohio Constitution.

*State v. Brown,* 167 Ohio App.3d 239 (Ohio App. 10 Dist. June 27, 2006); *Exhibits 22-25 and 28 to Return of Writ.*[2] On June 27, 2006, the appellate court affirmed the trial court's

---

[2] On September 20, 2005, petitioner attempted to obtain copies of the record and transcript at state expense in connection with the appeal of his motion for a new trial.

judgment. Petitioner filed a timely appeal to the Ohio Supreme Court. He raised the

following propositions of law:

> 1. *Res judicata* does not bar appellate review of Rule 32.1 motions to withdraw pleas.

> 2. Indigents have a constitutional right to transcripts in their appeals. Indigents have a constitutional right to an attorney in their appeals of right.

> 3. Manifest injustice was shown in appellate brief and the plea was signed under duress. The appellate court erred by not considering the record.

*Exhibit 30 to Return of Writ.* On October 18, 2006, the Ohio Supreme Court denied leave to

appeal and dismissed the appeal as not involving any substantial constitutional question.

*Exhibit 32 to Return of Writ.*

Petitioner filed a petition for a writ of mandamus with the Ohio Supreme Court on

January 30, 2006, requesting production of transcripts of pre-plea hearings, video tapes,

entries, and exhibits at state expense. *Exhibit 33 to Return of Writ.* On April 12, 2006, the

Ohio Supreme Court dismissed petitioner's petition for a writ of mandamus. *Exhibit 35 to

Return of Writ.*

On January 11, 2007, petitioner filed the instant *pro se* petition for a writ of habeas

corpus pursuant to 28 U.S.C. §2254. He alleges that he is in the custody of the respondent

---

The appellate court denied these requests. *See attachments to Exhibit 30 to Return of Writ.*

in violation of the Constitution of the United States based upon the following grounds:

1. Sentence was illegal. Factors used to give sentence required judicial factfinding authorized by a jury or admission.

I was giv[en] maximum consecutive sentences under Ohio law. In Ohio judges must give the minimum sentence unless certain factors are proven. These factors were not proven or admitted.

2. Ohio law and federal law require judicial finding of facts not proven to a jury beyond a reasonable doubt before the imposition of consecutive sentences. [I] was given consecutive sentences of ten plus ten without being able to address factors that were used to give consecutive sentences to a jury.

3. Ohio Supreme Court's ruling removing requirements of the trial to use factors to determine a sentence was unconstitutional.

No factors were considered when I [was] sentenced to maximum consecutive sentences. The legislature of Ohio required a judge to find these factors. The U.S. Supreme Court said that those factors must be proven to a jury. The Ohio Supreme Court overstepped their authority by invalidating laws that require any factfinding that the legislature intended to make judges responsible for the sentences they give.

4. Denied the trial record on appeal to prove that plea was involuntary.

I filed a motion to withdraw my plea. It was denied by the trial court. I appealed. As an indigent I requested the trial record to prove my claims. The appellate court denied my request and I filed a writ in the Ohio Supreme Court. The writ was denied without opinion. The trial record would show that I was denied access to the courts, beaten and tortured at the jail and that the prosecution lied about evidence of this torture.

*See Petition.* In his memorandum in support of the petition, petitioner raises the following

claims:[3]

> 1A. The confession to the crimes with the plea agreement, violated by being involuntary, the Fourteenth Amendment due process clause....

> 2A. I was denied my Fourteenth Amendment right to an examination to determine whether I was competent to proceed pro se, plead guilty or stand trial after being tortured and hung myself.... the trial judge refused to allow a competency hearing to be done before signing the plea after I hung myself in his holding cell.

> 3A. The guilty plea was in violation of the due process rights given in the Fifth and Fourteenth Amendments in that it was involuntary and unknowing....

> 4A. I was not permitted to have effective assistance of counsel.... I was pro se in most of the proceedings but forced to go pro se due to ineffective lawyers and the refusal of the trial judge to appoint new ones or inquire into the reasons for my complaints.... After I hung myself I should never [have] been allowed to represent myself when the judge ordered a competency hearing.

> 5. That an appeal of a post sentence motion to withdraw a plea denial is an appeal of right and the denial of an attorney for my appeal by the court denied me due process....

> 6. That delays caused by the judge, prosecutor and police violated my Sixth Amendment right to a speedy trial where I demanded a speedy trial for 2 ½ years, that the six year delays

---

[3] Respondent refers to the claims raised in petitioner's memorandum in support as claims one through fifteen. *See Return of Writ.* To avoid confusion, this Court therefore refers to the first four of these claims as claims one A through four A.

were caused by deliberate unconstitutional rulings by the trial judges, that further delays were caused by deliberate unconstitutional rulings in my appeals, that the delays caused harm to my case and that I refused to sign any continuances except two due to duress....

7. (Unexhausted and withdrawn by petitioner.)

8. That I was denied my... rights... by the totality of the denial of my right to access the courts, to have a process to obtain witnesses in my trial, to seek redress for constitutional violations of due process at the jail, by the totality of unconstitutional conditions at the jail... for being beaten and tortured in retaliation for seeking redress... for using altered evidence to deny access to the courts, for filing false charges to deny me access to the court, by telling advisory counsel to not help me prepare for trial, denying medical care, prosecutorial misconduct in lying about the contents of video tapes, by the refusal of the trial judge to put tapes and other evidence of torture and the denial of his orders on the record, by stealing video tapes out of evidence that proves criminal violations of the trial judge, prosecution and sheriff. ....

9. The trial judge refused to rule on motions for expert witnesses and other motions to force me to give up my pro se status....

10. The prosecution refused to have DNA tested to show I was stabbed and bled all over the scene. [In violation of] Brady v. Maryland.... They also refused to provide a cite [sic] map to show where over 100 swabs of blood were taken in order to cover up that I was stabbed and bled all over the place.

11. I was sentenced under sentencing laws that were unconstitutional....

12. The trial judge was biased and deliberately violated my right to due process....

13. I was denied the trial record by the appellate court which violated my... right to due process....

14. I was denied the trial record by the Ohio Supreme Court by denying the writ of mandamus I filed to compel the appellate court to allow the trial record to be produced for appeal. This denial violated my... right to due process....

15. That I was denied substantive due process by the prosecution....

Petitioner again summarizes all of his claims in his August 22, 2007, renewed motion for discovery and *Traverse*, at 5-6, Doc. No. 18. It is the position of the respondent that all of petitioner's remaining claims are waived or without merit.

## PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. §2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) *(per curiam); Picard v. Connor*, 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the

alleged constitutional error. *Murray v. Carrier,* 447 U.S. 478, 485 (1986); *Engle v. Issac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall,* 757 F.2d 94 (6th Cir. 1985).

In claims one, two, and eleven, petitioner asserts that his sentence violated *Blakely v. Washington,* 542 U.S. 296 (2004), although it was imposed pursuant to the joint recommendation of the parties. In claim three, petitioner asserts that application of the Ohio Supreme Court's decision in *State v. Foster,* 109 Ohio St.3d 1 (2006)(excising portions of Ohio's sentencing statutes as unconstitutional under *Blakely*), violates the Ex Post Facto

Clause. These claims, being readily apparent from the face of the record, should have been raised on direct appeal, but were not. Petitioner argued on direct appeal only that the trial court failed to comply with Ohio Criminal Rule 11 and that his guilty plea was not knowing, intelligent, or voluntary because the trial court failed to advise petitioner that he was entitled to a jury determination of sentencing factors prior to imposition of maximum consecutive sentences. *See Exhibits 15 to Return of Writ.* Petitioner first raised his *Blakely* and Ex Post Facto claims in his subsequent appeal to the Ohio Supreme Court, *see Exhibit 19 to Return of Writ*; however, the Ohio Supreme Court does not ordinarily consider claims not raised in the appellate court below. *See Mitts v. Bagley,* 2005 WL 2416929 (N.D.Ohio September 29, 2005) (habeas petitioner's failure to raise a claim in the Ohio Court of Appeals precludes review by the Supreme Court of Ohio), citing *Fornash v. Marshall,* 686 F.2d 1179, 1185 n. 7 (6th Cir. 1982)(citing *State v. Phillips,* 27 Ohio St.2d 294, 302 (1971)).

That said, at least since *Foster,* 109 Ohio St.3d 1, the Ohio Supreme Court has considered *Blakely* claims not previously raised in the appellate court below. *See State of Ohio v. Scranton Buchanan,* 2006 WL 3059911 (Ohio App. 7th Dist. October 26, 2007)(and cases cited therein). Here, the trial court sentenced petitioner on March 28, 2005, *i.e.,* long after the United States Supreme Court's June 24, 2004, decision in *Blakely,* but prior to the February 27, 2006, decision in *Foster.* Petitioner clearly could have, but did not, raise his *Blakely* claim in the Ohio Court of Appeals. The state appellate court dismissed his appeal on January 31, 2006, approximately one month before *Foster.* On March 14, 2006, after *Foster,* the Ohio Supreme Court *sua sponte* dismissed petitioner's appeal, declining to

16

address the merits of his claims. *Exhibit 19 to Return of Writ.*

Regardless of the date that the Ohio Supreme Court issued its decision in *Foster*, petitioner failed to raise his on-the-record *Blakely* claims in the Ohio Court of Appeals. Arguably, therefore, he has waived his right to present such claims in these habeas corpus proceedings. Even assuming that petitioner's *Blakely* claims are properly before this Court in view of the Ohio Supreme Court's consideration of such claims raised in the first instance in that court, however, this Court nevertheless concludes that such claims lack merit.

Petitioner asserts in claim three that application of *Foster* violated the Ex Post Fact Clause. As noted *supra*, the trial court imposed sentence on March 28, 2005, long before the Ohio Supreme Court's February 27, 2006, decision in *Foster*. Therefore, *Foster* had no application to petitioner's sentence in this case. Additionally, because the trial court imposed sentence pursuant to the joint agreement of the parties and under the terms of petitioner's negotiated guilty plea, Ohio law did not require the trial court to engage in any of *Blakely's* prohibited fact finding prior to imposition of sentence. *See State v. Porterfield*, 106 Ohio St.3d 5 (2006). This Court agrees with the reasoning of the United States Court of Appeals for the Southern District of Ohio, Western Division, on this point and concludes that petitioner's sentence therefore did not violate *Blakely*. *See Warren v. Warden*, 2008 WL 1732976 (S.D. Ohio April 10, 2008)(noting disagreement with *Friley v. Wolfe*, 2006 WL 3420209 (S.D. Ohio November 27, 2006).

In claims one A and three A, petitioner asserts that his guilty plea was coerced and

involuntary, and was made under threat of physical violence. In claim two A, petitioner asserts that he was improperly denied a competency hearing prior to his guilty plea. In claim four A, petitioner asserts that he was denied the effective assistance of counsel and a competency hearing. In claims five, six, nine, ten, and twelve, petitioner asserts that he was denied the effective assistance of counsel, his right to a speedy trial, and a fair trial due to prosecutorial misconduct and judicial bias, and that the trial court refused to rule on his pre-trial motions to force petitioner to give up his right to proceed *pro se*. Petitioner first raised these claims in his August 3, 2005, motion to withdraw his guilty plea; however, the state appellate court refused to address the merits of such claims, concluding that they were barred under Ohio's doctrine of *res judicata*:

> On March 22, 2000, appellant was indicted on two counts of aggravated murder and one count of aggravated robbery. Each of the aggravated-murder counts carried a death specification. Appellant was ultimately convicted as charged in the indictment. On appeal, this court reversed appellant's conviction. *State v. Brown*, Franklin App. No. 01AP-587, 2002-Ohio-2802, 2002 WL 1163760 (" *Brown I* ").

> On March 28, 2005, appellant, appearing *pro se* with the assistance of advisory counsel, pleaded guilty to one count of the stipulated lesser-included offense of involuntary manslaughter without specification and one count of aggravated robbery. Upon application by plaintiff-appellee, the State of Ohio, and for good cause shown, the trial court ordered a *nolle prosequi* to the second aggravated-murder count. Pursuant to a joint sentencing recommendation, the trial court imposed a prison sentence of ten years on each count, to be served consecutively. On appeal, this court affirmed the trial court's judgment. *State v. Brown*, Franklin App. No. 05AP-375, 2006-Ohio-385, 2006 WL 225524 (" *Brown II* ").

On August 3, 2005, appellant filed in the trial court a *pro se* motion to withdraw his guilty plea. The trial court denied appellant's motion without an evidentiary hearing. Appellant appealed that denial to this court and presents the following assignment of error:

Did the trial Court Abuse [its] d[i]scretion when it Denied Appellant[']s Motion to Withdraw his plea in violation of his Constitutional Right to Due Process of Law, the 14th Amendment of the Constitution, the 5th, 1st, and 8th Amendment, Article I, Section 16 of the Ohio Constitution.

Crim.R. 32.1 provides that a trial court may grant a defendant's postsentence motion to withdraw a guilty plea only to correct a manifest injustice. Therefore, "[a] defendant who seeks to withdraw a plea of guilty after the imposition of sentence has the burden of establishing the existence of manifest injustice." *State v. Smith* (1977), 49 Ohio St.2d 261, 3 O.O.3d 402, 361 N.E.2d 1324, paragraph one of the syllabus. Although no precise definition of "manifest injustice" exists, in general, " 'manifest injustice relates to some fundamental flaw in the proceedings which result[s] in a miscarriage of justice or is inconsistent with the demands of due process.' " *State v. Wooden,* Franklin App. No. 03AP-368, 2004-Ohio-588, 2004 WL 239996, at ¶ 10, quoting *State v. Hall,* Franklin App. No. 03AP-433, 2003-Ohio-6939, 2003 WL 22976587; see, also, *State v. Odoms,* Franklin App. No. 04AP-708, 2005-Ohio-4926, 2005 WL 2277519, quoting *State ex rel. Schneider v. Kreiner* (1998), 83 Ohio St.3d 203, 208, 699 N.E.2d 83 ("[a] manifest injustice has been defined as a 'clear or openly unjust act'"). Under this standard, a postsentence withdrawal motion is allowable only in extraordinary cases. *Smith,* 49 Ohio St.2d at 264, 3 O.O.3d 402, 361 N.E.2d 1324.

"A motion made pursuant to Crim.R. 32.1 is addressed to the sound discretion of the trial court, and the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court." *Id.* at paragraph two of the syllabus. Thus, we review a trial court's denial of a motion to withdraw a guilty plea under an abuse-

of-discretion standard, and we reverse that denial only if it is unreasonable, arbitrary, or unconscionable. *Odoms,* 2005-Ohio-4926.

Here, within his single assignment of error, appellant asserts ten grounds for finding error with the trial court's denial. In appellee's view, the doctrine of *res judicata* bars all of them. Under the doctrine of *res judicata,* a final judgment bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that the defendant raised or could have raised at trial or on appeal. *State v. Szefcyk* (1996), 77 Ohio St.3d 93, 96, 671 N.E.2d 233, reaffirming *State v. Perry* (1967), 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104, paragraph nine of the syllabus. More specifically, a criminal defendant cannot raise any issue in a postsentence motion to withdraw a guilty plea that was or could have been raised at trial or on direct appeal. *State v. Reed,* Mahoning App. No. 04 MA 236, 2005-Ohio-2925, 2005 WL 1385711; *State v. Zinn,* Jackson App. No. 04CA1, 2005-Ohio-525, 2005 WL 318690; *State v. Robinson,* Cuyahoga App. No. 85266, 2005-Ohio-4154, 2005 WL 1926043; *State v. Rexroad,* Summit App. No. 22214, 2004-Ohio-6271, 2004 WL 2674605; *State v. Reynolds,* Putnam App. No. 12-01-11, 2002-Ohio-2823, 2002 WL 1299990; *State v. Wyrick* (Aug. 31, 2001), Fairfield App. No. 01CA17, 2001 WL 1025811; *State v. Jackson* (Mar. 31, 2000), Trumbull App. No. 98-T-0182, 2000 WL 522440; *State v. Jeffries* (July 30, 1999), Wood App. No. L-98-1316, 1999 WL 550251. As other courts in Ohio have found:

"Crim.R. 32.1 derives from the court's inherent power to vacate its own prior orders when justice so requires. In that regard, it is comparable to Civ.R. 60(B), which contemplates equitable relief from a final order subject to certain defects. In this context, it is noteworthy that Civ.R. 60(B) relief is not a substitute for appellate review of prejudicial error. *Doe v. Trumbull Cty. Children's Services Bd.* (1986), 28 Ohio St.3d 128 [28 OBR 225], 502 N.E.2d 605. We believe that the same bar reasonably applies to Crim.R. 32.1." *State v. Hartzell* (Aug. 20, 1999), 2nd Dist. No. 17499, 1999 WL 957746, 2.

"This, in effect, prevents a criminal defendant from having a second bite at the apple. If a defendant believes that the trial court has committed an error, then he should raise that error at the first possible opportunity, not in a collateral attack. The doctrine of *res judicata* applies to issues raised in a motion to withdraw a guilty plea in the same way that the doctrine applies to issues raised in a petition for post-conviction relief." *State v. White* (May 26, 2004), 7th Dist. No. 03 MA 168 at 3. * * *

*Reed*, 2005-Ohio-2925, at ¶ 12-13.

With these principles as our guide, we turn now to appellant's motion to withdraw his guilty plea and the trial court's denial of that motion.

Appellant's primary complaint is that his guilty pleas were obtained under duress. In his motion to withdraw his guilty plea, appellant claimed that "he was illegally placed under duress by this court, the prosecution, and the Franklin County Sheriffs Department." He further stated: "The circumstances of this duress were shown to this court thru out [sic] the pre-trial proce[e]dings by way of motions, videotape and with affidavits."

Appellant makes similar arguments here when he asserts that the duress arose from his mistreatment and "torture" at the jail while being held for trial. In support of his claims, appellant directs us to 49 documents within the trial court record of this case, primarily including motions and letters submitted to the trial court. These documents confirm that appellant took every opportunity to raise these very same issues with the trial court and that the court addressed them. *See, e.g.,* the November 17, 2004 "[d]ecision and entry denying defendant's motion to order jail to provide access to telephone, defendan[t's] motion for seven tapes and due process objections, and motion to transcribe tapes of defendant[.]" ("The Court finds that defendant's conduct and continued filing of the same motions are intended to frustrate the trial. Defendant shall remain in custody in Franklin County until this case is concluded.") Therefore, appellant could have presented these issues in his

appeal from final judgment.

Appellant's remaining claims are similarly flawed. They include claims of denied access to the courts, lawyers, and witnesses; prosecutorial misconduct; incompetence (based on drug use and mistreatment); plea made unknowingly (based on drug use and mistreatment); judicial misconduct; denied counsel; failure to follow Crim.R. 11; error in accepting the pleas; substantive violations due to undue influence of the court, prosecution, and police; denied access to legal resources; and error in denying his motion to dismiss. While some of these issues appear, at first glance, to be new, closer examination reveals that appellant brought each of the underlying issues to the attention of the trial court multiple times. Thus, he raised these same issues to the trial court, the court addressed them multiple times, he could have raised them on appeal, and *res judicata* prevents him from raising them now.

Moreover, while Ohio courts recognize an exception to the doctrine of *res judicata* in postconviction proceedings when the petitioner presents new and competent evidence outside the record, there is no such evidence here. *See, e.g., Robinson,* 2005-Ohio-4154. Appellant submitted no evidence from outside the record in support of his motion. In fact, he submitted no supporting documentation or evidence of any kind in support of his motion. Thus, any exception to the application of *res judicata* based on evidence outside the record is inapplicable here.

Finally, we find that even if the doctrine of *res judicata* did not bar all of appellant's claims, his own self-serving declarations of coercion would not be enough to show manifest injustice. As we noted at the outset, "the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by" the trial court. *Smith,* 49 Ohio St.2d 261, 3 O.O.3d 402, 361 N.E.2d 1324, at paragraph two of the syllabus. The voluminous record in this case clearly shows the trial court's knowledge of appellant's repeated attempts to make similar claims, as well as the trial court's careful consideration

of those claims. We note, for example, entries reflecting multiple appointments of counsel and/or legal advisors for appellant, awards of funds for supplies, expert witnesses, and investigators, the allowance of extraordinary legal fees, a psychological evaluation to determine appellant's competence, and repeated continuances at appellant's request. In all, this record reflects a trial court of extraordinary patience and undoubted familiarity with the good faith, credibility, and weight of appellant's claims. We find no abuse of discretion here.

For these reasons, we overrule appellant's assignment of error, and we affirm the decision of the Franklin County Court of Common Pleas.

*State v. Brown*, 167 Ohio App.3d 239 (Ohio App. 10th Dist. June 27, 2006).

Referring to the concurring opinion of Judge Peggy L. Bryant, petitioner contends that the state appellate court improperly invoked Ohio's doctrine of *res judicata*, when it failed to consider the substance of his claims, and that his claims are therefore properly before this Court for consideration on the merits. The concurring opinion reasoned:

Although I agree with the majority's conclusion that the judgment of the trial court be affirmed, I disagree with the majority's determination that *res judicata* bars consideration of defendant's Crim.R. 32.1 motion to withdraw his guilty plea. Accordingly, I concur separately.

A criminal defendant essentially has three options to obtain review of a guilty plea: a direct appeal, a petition for postconviction relief under R.C. 2953.21, and a motion to withdraw a guilty plea pursuant to Crim.R. 32.1. The majority concludes that if a defendant does not directly appeal a guilty plea, then *res judicata* bars consideration of any issue that could have been raised in that appeal. In effect, the majority treats a motion under Crim.R. 32.1 and a petition for postconviction

23

relief in the same manner, as established case law provides that *res judicata* bars a defendant from pursuing in a petition for postconviction relief any issue that could have been addressed on direct appeal. *See, e.g., State v. Szefcyk* (1996), 77 Ohio St.3d 93, 671 N.E.2d 233.

The Ohio Supreme Court, however, recently clarified that a motion to withdraw a guilty plea is not a form of petition for postconviction relief, but a separate avenue of relief. *State v. Bush*, 96 Ohio St.3d 235, 2002-Ohio-3993, 773 N.E.2d 522. As the court explained, "R.C. 2953.21(J), part of the postconviction relief statutory scheme, provides that 'the remedy set forth in this section is the exclusive remedy by which a person may bring a collateral challenge to the validity of a conviction or sentence in a criminal case * * *.' Given that a postsentence Crim.R. 32.1 motion is not collateral but is filed in the underlying criminal case and that it targets the withdrawal of a *plea*, it is not a 'collateral challenge to the validity of a *conviction or sentence*.' *See State v. Calhoun* (1999), 86 Ohio St.3d 279, 281, 714 N.E.2d 905 ('a postconviction proceeding is * * * a collateral civil attack on the judgment'); Black's Law Dictionary (7th Ed.Rev.1999) 255 (defining 'collateral attack' as '[a]n attack on a judgment entered in a different proceeding')." (Emphasis sic.) *Id.* at ¶ 13. Thus, the court concluded that "[p]ostsentence motions to withdraw guilty or no contest pleas and postconviction relief petitions exist independently." *Id.* at ¶ 14.

Although its decision pre-dated *Bush*, the Second District Court of Appeals applied the same rationale in *State v. Wolford* (Sept. 17, 1999), Miami App. No. 99CA10. In *Wolford,* th e court acknowledged that the doctrine of *res judicata* may bar a postconviction relief petition because the petition collaterally challenges, in a separate action, a conviction from a prior criminal action. Distinguishing a Crim.R. 32.1 motion from a petition for postconviction relief, *Wolford* concluded that "[t]he same does not apply to a motion to withdraw a plea that is filed in the identical criminal proceeding which resulted in the conviction, as Crim.R. 32.1 motions are. Therefore, the *res judicata* bar does not apply."

Indeed, the Supreme Court in *Bush* was faced with a motion to withdraw a guilty plea filed outside the 30-day appeal period under App.R. 4(A). It nonetheless did not inquire whether a prior appeal or failure to appeal had a *res judicata* effect on issues raised in the Crim.R. 32.1 motion. Rather, it determined that the passage of time was a factor to be considered in determining the merits of the motion. The Supreme Court never has applied the doctrine of *res judicata* to a Crim.R. 32.1 motion.

I nonetheless recognize that, for example, a defendant may attempt to raise in a motion to withdraw a guilty plea an issue raised and determined on direct appeal. In that instance, the appellate ruling bars consideration of the issue a second time, albeit technically due to the law of the case as opposed to *res judicata. See, e.g., State v. Ikharo,* Franklin App. No. 05AP-167, 2005-Ohio-6616, 2005 WL 3416177. To the extent that defendant raises issues in his Crim.R. 32.1 motion that were resolved in his appeal, the prior determination bars re-examination of those issues. The majority opinion, however, does not note any particular issue determined on appeal that reappears in defendant's Crim.R. 32.1 motion to withdraw his guilty plea.

In the final analysis, a criminal defendant's failure to file a direct appeal does not preclude, through *res judicata,* the option of pursuing a Crim.R. 32.1 motion. Instead, it subjects the defendant to the difficult task of demonstrating the manifest injustice and extraordinary circumstances necessary to prevail in such a motion. Generally, as *Wolford* explained, " 'a court's failure to comply with the requirements of Crim.R. 11(C) is not an extraordinary circumstance demonstrating a form of manifest injustice required for Crim.R. 32.1 relief.' " *Id.,* quoting *State v. Hartzell* (Aug. 20, 1999), Montgomery App. No. 17499, 1999 WL 957746. Thus, as a result of a defendant's failure to directly appeal, pursuant to App.R. 4(A) or 5(A), the guilty-plea proceedings likely will result in a failure to prevail in the Crim.R. 32.1 motion, not because of res judicata, but because of the defendant's inability to demonstrate manifest injustice.

> Although I disagree with the majority's disposition of the state's *res judicata* argument, I nonetheless concur, for the reasons set forth in ¶ 13 of the majority opinion, in the majority's determination to affirm the judgment of the trial court. Accordingly, I concur separately.

*Id.* Petitioner's argument that the majority in the state appellate court misapplied Ohio's doctrine of *res judicata* is not persuasive.

"[A] federal court must defer to the state court's interpretation of its own procedural laws, even if the court errs in applying its own rules regarding procedural default, unless that interpretation contravenes clearly established federal law." *Cvijetinovic v. Eberlin,* 2008 WL 918576 (N.D. Ohio March 31, 2008), citing *Simpson v. Jones,* 238 F.3d 399, 406-07 (6th Cir.2000). Such are not the circumstances here. Petitioner's on-the-record claims should have been raised on direct appeal, but were not. Under these circumstances, the Court is not persuaded that the appellate court misapplied Ohio's doctrine of *res judicata* such that a *de novo* review of his claims is warranted in these proceedings. *See, e.g., Hill v. Mitchell,* 400 F.3d 308, 314 (6th Cir. 2005).

The Court notes that, in *State v. Szefcyk,* 77 Ohio St.3d 93, 96, referred to in the concurring opinion quoted *supra,* the Ohio Supreme Court reaffirmed its holding in *State v. Perry,* 10 Ohio St.2d 175 (1967), as follows:

> [A] convicted defendant is precluded under the doctrine of *res judicata* from raising and litigating *in any proceeding,* except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on appeal from that judgment. We approve of

and follow paragraph nine of the syllabus of *State v. Perry,*
*supra.*

*State v. Szefcyk, supra (emphasis added); see also State v. Combs,* 2008 WL 3822570 (Ohio App.

11th Dist. August 15, 2008)(doctrine of *res judicata* applies to motions to withdraw a guilty

plea under Ohio Criminal Rule 32.1); *Jackson v. Friley,* 2007 WL 4395161 (Ohio App. 4th Dist.

December 14, 2007); *State v. Sneed,* 2005 WL 926993 (Ohio App. 8th Dist. April 21, 2005); *State*

*v. Zhao,* 2004 WL 1397581 (Ohio App. 9th Dist. June 23, 2004). Indeed, only one of Ohio's

appellate courts has held that the doctrine of *res judicata* does not apply to a motion to

withdraw a guilty plea under Rule 32.1. *State v. Wolford, supra.*

This Court must decide whether the procedural bars applied to petitioner's claims

in the state courts constitute adequate and independent bases upon which to foreclose

review by this Court of petitioner's federal constitutional claims. This task requires the

Court to balance the state's interests behind each procedural rule against the federal

interest in reviewing federal claims. *See Maupin v. Smith,* 785 F.2d at 138. Under this

analysis, the procedural rules barring petitioner's claims constitute adequate and

independent state grounds for denying relief. The state courts must be given a full and fair

opportunity to remedy alleged constitutional defects. The time limitations for filing

appeals and the requirement that all available claims be asserted at the first opportunity

to do so serve the state's interests in finality and in ensuring that claims are adjudicated at

the earliest possible opportunity. Further, the doctrine of *res judicata* is stated in

unmistakable terms in numerous Ohio decisions and Ohio courts have consistently refused

to review claims on the merits under that doctrine. *See State v. Cole, supra; State v. Ishmail, supra; State v. Perry, supra.*

Petitioner appears to contend, *see Reply*, Doc. No. 18, that in view of *Wolford, supra*, Ohio does not consistently apply the doctrine of *res judicata* to motions to withdraw a guilty plea so that his procedural default of claims raised in this motion fail the third part of the *Maupin* test. *Id.* Again, this Court is not persuaded by petitioner's argument. To qualify as "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson,* 501 U.S. 722, 732-33 (1991). To qualify as "adequate," the state procedural rule must, among other things, be firmly established and regularly followed by the state courts. *Ford v. Georgia,* 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id.* at 423 (quoting *James v. Kentucky,* 466 U.S. 341, 348-351 (1984)); *see also Barr v. City of Columbia,* 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers,* 377 U.S. 288, 297 (1964). The United States Court of Appeals for the Sixth Circuit has consistently affirmed that Ohio's doctrine of *res judicata* is an adequate ground for denying federal habeas relief. *Hartman v. Bagley,* 492 F.3d 347, 357-58 (6th Cir.2007); *Carter v. Mitchell,* 443 F.3d 517, 538 (6th Cir.2006); *Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir. 1998). Further, the refusal of a single Ohio court of appeals to apply *res judicata* to a motion under Ohio's Criminal Rule 32.1 does not render the doctrine inconsistently applied so as to render the rule inadequate. *Cf. Hicks v. Collins,* 384 F.3d 204, 212 (6th Cir. 2004), citing *Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir.

2001)(enforcing procedural default for failure to follow rule as established in the District Court where the appeal was filed.) This Court therefore concludes that claims one, two, three, one A, two A, three A, four A, five, six, nine, ten, eleven and twelve have been waived.

Petitioner can still secure review of these claims if he demonstrates cause for his failure to follow the state procedural rules as well as actual prejudice from the constitutional violations that he alleges. Petitioner has failed to demonstrate either cause for his procedural defaults or actual prejudice resulting from the alleged constitutional violations.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333.

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316, 115 S.Ct. 851. Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317, 115 S.Ct. 851. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327, 115 S.Ct. 851. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United*

> *States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).
> "To be credible, such a claim requires petitioner to support his
> allegations of constitutional error with new reliable evidence-
> whether it be exculpatory scientific evidence, trustworthy
> eyewitness accounts, or critical physical evidence-that was not
> presented at trial." *Schlup,* 513 U.S. at 324, 115 S.Ct. 851. The
> Court counseled however, that the actual innocence exception
> should "remain rare" and "only be applied in the
> 'extraordinary case.' " *Id.* at 321, 115 S.Ct. 851.

*Souter v. Jones,* supra, 395 F.3d at 589-90(footnote omitted). Petitioner has failed to meet this standard here.

This Court has carefully considered the entire record, including the videotape submitted by petitioner which purportedly depicts prison officials torturing or coercing petitioner into entering his guilty plea. Nothing depicted therein, nor anything in the record before this Court, supports petitioner's allegations in this regard or his claim of actual innocence. Notably, the transcript of petitioner's guilty plea indicates:

> COURT: My understanding today is that you do not want a
> trial.
>
> DEFENDANT: No, I don't.
>
> ***
>
> COURT: Sir, did anyone promise you anything or threaten you
> to cause you to sign this [guilty plea] form?
>
> DEFENDANT: No, sir.

*Exhibit 11 to Return of Writ, Transcript, Guilty Plea,* at 14, 20.

## CLAIMS FOUR, THIRTEEN AND FOURTEEN

In claims four, thirteen and fourteen, petitioner asserts that the state courts unconstitutionally denied him a copy of the record at state expense in connection with his motion to withdraw his guilty plea. Petitioner also alleges that prison officials forced him to "send out" his records and destroyed other documents. *Petition*, at 36. He further complains that the Ohio Supreme Court improperly denied his petition for a writ of mandamus in which he attempted to obtain a copy of all pre-trial transcripts, jail video tapes, entries, and other exhibits at state expense. He alleges that the state courts denied him a copy of the record "to protect the prosecution and trial judge from civil and criminal liability." *Id.* Petitioner's claims lack merit.

On May 13, 2005, and August 24, 2005, petitioner filed requests for the complete transcript in connection with his appeal, in which he was represented by counsel, at state expense; the appellate court denied these requests. *See* Doc. Nos. 39, 41, 42. The appellate court also denied petitioner's request to file a *pro se* supplemental brief. *See id.* In an entry dated September 28, 2005, the appellate court denied petitioner's September 2005, motion for transcripts at state expense:

> Appellant has not demonstrated entitlement to transcripts at state expense in an appeal from a post conviction judgment rendered by the trial court. This appeal is not a direct appeal from the appellant's original convictions. Appellant's December 15, 2005, motion for reconsideration of this court's prior denial of transcripts at state expense is denied.

*See Attachments to Exhibit 30 to Return of Writ.* To the extent that petitioner raises an issue regarding the appellate court's denial of transcripts in connection with his direct appeal,

the appellate court's characterization of petitioner's appeal as other than a direct appeal is binding on this Court unless it is contrary to clearly established federal law or was based on an unreasonable determination of the facts of record. 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* 28 U.S.C. § 2254(d). There are three standards of review:

> [T]he deferential standard [for review] provided under § 2254 (d); the *de novo* standard, and the "intermediate approach." *See Maples v. Stegall,* 340 F.3d 433, 436 (6th Cir. 2003) (*de novo*); *Harris v. Stovall,* 212 F.3d 940, 943 (6th Cir. 2000), *cert. denied,* 532 U.S. 947, 121 S.Ct. 1415, 149 L.Ed.2d 356 (2001) (discussing alternate standards); *McKenzie v. Smith,* 326 F.3d 721, 726-27 (6th Cir. 2003), *cert. denied,* 540 U.S. 1158, 124 S.Ct. 1145, 157 L.Ed.2d 1057 (2004) (same); *Howard v. Bouchard,* 405 F.3d 459, 467 (6th Cir.2005) (same). The gist of circuit precedent is that when there is a decision, deference is accorded under § 2254(d) to the state court decision under the "intermediate approach." *Maldonado v. Wilson,* 416 F .3d 470, 476 (6th Cir.2005); *Howard,* 405 F.3d at 467. When there is no decision or "no results," federal review is *de novo. See Wiggins v. Smith,* 539 U.S. at 534, 123 S.Ct. at 2542 (*de novo* when there was no state court decision on second prong of *Strickland* test). When the state court has failed to articulate a decision or provide a rationale, the district court must distinguish between a situation of "no results" from that of "no reasoning". *Howard v. Bouchard,* 405 F.3d at 467; *McKenzie,* 326 F.3d at 727. As illustrated in

> *McKenzie*, the "no reasoning" situation occurs when the state
> court has issued a summary order, which fails to explain its
> reasoning, as opposed to the situation where no state court has
> "directly addressed the specific issue." In the latter situation
> there are "no results" for the federal court to defer, and *de novo*
> review by the federal court is required. *See Wiggins v. Smith*,
> 539 U.S. at 534, 123 S.Ct. at 2542; *McKenzie*, 326 F.3d at 727.

*Socha v. Wilson*, 447 F.Supp.2d 809, 819 (N.D. Ohio 2007). Regardless of the standard of

review employed, petitioner's claims fail.

> "*Griffin [v. Illinois*, 351 U.S. 12 (1956)] and its progeny
> command that a State must 'provide indigent prisoners with
> the basic tools of an adequate defense or appeal, when those
> tools are available for a price to other prisoners.' " *Riggins v.
> Rees*, 74 F.3d 732, 735 (6th Cir.1996) (quoting *Britt v. North
> Carolina*, 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400
> (1971)).

> In *Britt v. North Carolina*, the Supreme Court held that "the
> State must provide an indigent defendant with a transcript of
> prior proceedings when that transcript is needed for an
> effective defense or appeal." 404 U.S. at 227, 92 S.Ct. at 433. In
> assessing an indigent defendant's claim of right to a free
> transcript, the *Britt* court "identified two factors that are
> relevant to the determination of need: (1) the value of the
> transcript to the defendant in connection with the appeal or
> trial for which it is sought, and (2) the availability of alternative
> devices that would fulfill the same functions as a transcript."
> *See id.; Riggins*, 74 F.3d at 735.

*Greene v. Brigano*, 123 F.3d 917, 920 (6th Cir. 1997).

In this case, petitioner was represented on appeal by counsel who had access to the

trial record and transcripts. Under these circumstances, the appellate court's refusal to

provide duplicate transcripts at state expense was not constitutionally impermissible. *See*

*Lee v. Wilson*, 2007 WL 2571954 (N.D. Ohio August 31, 2007), *amended on other grounds*, 2007

WL 2815204 (N.D. Ohio September 25, 2007)(stating that appellate counsel had no duty to

turn over the transcript to the defendant during preparation of the appeal).

> In *Price v. Johnston,* 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356
> (1948), the Supreme Court stated that "a prisoner has no
> absolute right to argue his own appeal or even to be present at
> the proceedings in an appellate court." *Id.* at 285, 68 S.Ct. at
> 1060.
>
> ***
>
> Additionally, there is no constitutional right to hybrid
> representation. ... Thus, when a criminal appellant accepts the
> assistance of counsel, but later objects to his attorney's appeal
> strategy or preparation of the brief, the criminal appellant
> cannot then expect to be allowed to file a supplemental pro se
> brief. By accepting the assistance of counsel the criminal
> appellant waives his right to present *pro se* briefs on direct
> appeal.

*Myers v. Johnson,* 76 Fed.3d 1330, 1335 (5th Cir. 1996), citing *McKaskle v. United States,* 394

U.S. 459 (1969).

Petitioner again sought a copy of the record in connection with his August 2005

motion to withdraw guilty plea. *See Exhibit 30 to Return of Writ.* The appellate court again

denied his request. *See id.* Again, petitioner's claim that the appellate court's refusal to

provide a copy of the record at state expense in connection with his motion to withdraw

guilty plea fails to warrant federal habeas corpus relief.

> The Constitution does not require that an indigent-defendant
> be provided a free transcript for use in attacking his conviction
> collaterally where, as here, such a transcript was available to
> him on direct appeal. *United States v. MacCollom,* 426 U.S. 317,

34

> 325-326, 96 S.Ct. 2086, 2092[8], 48 L.Ed.2d 666 (1976) (plurality
> opinion), cited in *Johnson v. Hubbard,* 698 F.2d 286, 289, n. 1 (6th
> Cir.1983), *cert. den.* 464 U.S. 917, 104 S.Ct. 282, 78 L.Ed.2d 260
> (1983), for the proposition that due process does not require a
> free transcript on appeal for an indigent-plaintiff in a habeas
> corpus action. A prisoner is not entitled to a free transcript
> merely for the purpose of searching it for grounds for a
> possible application for post-conviction or habeas corpus relief.
> *Bentley v. United States,* 431 F.2d 250, 254[3] (6th Cir.1970), *cert.
> den.* 401 U.S. 920, 91 S.Ct. 907, 27 L.Ed.2d 823 (1971); *Lucas v.
> United States,* 423 F.2d 683, 684-685[5] (6th Cir.1970); *Ellis v.
> State of Maine,* 448 F.2d 1325, 1327[3] (1st Cir.1971).

*Watts v. State of Tennessee,* 603 F.Supp. 494-95 (D.C.. Tenn. 1984)(footnote omitted); *see also*

*Williams v. Trombley,* 2007 WL 3124677 (E.D. Michigan October 25, 2007)(same); *James v.*

*Kelly,* 2000 WL 222629 (S.D.N.Y. February 25, 2000)(same). Further, and contrary to

petitioner's allegation here, the record does not reflect that the state appellate court lacked

access to the record that petitioner sought to provide. In denying the merits of petitioner's

appeal from the denial of his motion for a new trial, the appellate court noted that it had

reviewed the "voluminous" record and that it provided no basis for relief:

> Appellant ... asserts that the duress arose from his
> mistreatment and "torture" at the jail while being held for trial.
> In support of his claims, appellant directs us to 49 documents
> within the trial court record of this case, primarily including
> motions and letters submitted to the trial court. These
> documents confirm that appellant took every opportunity to
> raise these very same issues with the trial court and that the
> court addressed them. See, e.g., the November 17, 2004
> "[d]ecision and entry denying defendant's motion to order jail
> to provide access to telephone, defendan[t's] motion for seven
> tapes and due process objections, and motion to transcribe
> tapes of defendant[.]" ("The Court finds that defendant's
> conduct and continued filing of the same motions are intended
> to frustrate the trial. Defendant shall remain in custody in

Franklin County until this case is concluded.") Therefore, appellant could have presented these issues in his appeal from final judgment.

Appellant's remaining claims are similarly flawed. They include claims of denied access to the courts, lawyers, and witnesses; prosecutorial misconduct; incompetence (based on drug use and mistreatment); plea made unknowingly (based on drug use and mistreatment); judicial misconduct; denied counsel; failure to follow Crim.R. 11; error in accepting the pleas; substantive violations due to undue influence of the court, prosecution, and police; denied access to legal resources; and error in denying his motion to dismiss. While some of these issues appear, at first glance, to be new, closer examination reveals that appellant brought each of the underlying issues to the attention of the trial court multiple times. Thus, he raised these same issues to the trial court, the court addressed them multiple times, he could have raised them on appeal, and *res judicata* prevents him from raising them now.

Moreover, while Ohio courts recognize an exception to the doctrine of *res judicata* in postconviction proceedings when the petitioner presents new and competent evidence outside the record, there is no such evidence here. See, e.g., *Robinson*, 2005-Ohio-4154. Appellant submitted no evidence from outside the record in support of his motion. In fact, he submitted no supporting documentation or evidence of any kind in support of his motion. Thus, any exception to the application of *res judicata* based on evidence outside the record is inapplicable here.

... The voluminous record in this case clearly shows the trial court's knowledge of appellant's repeated attempts to make similar claims, as well as the trial court's careful consideration of those claims. We note, for example, entries reflecting multiple appointments of counsel and/or legal advisors for appellant, awards of funds for supplies, expert witnesses, and investigators, the allowance of extraordinary legal fees, a psychological evaluation to determine appellant's competence, and repeated continuances at appellant's request. In all, this

record reflects a trial court of extraordinary patience and undoubted familiarity with the good faith, credibility, and weight of appellant's claims. We find no abuse of discretion here.

*State v. Brown, supra*, 167 Ohio app.3d at 243-44. Moreover, as previously discussed, the videotape submitted by petitioner fails to support his claims.

To the extent that petitioner contends that the Ohio Supreme Court improperly denied his petition for a writ of mandamus, this claim addresses a collateral matter unrelated to petitioner's detention and is not appropriate for federal habeas corpus review. "[T]he essence of habeas is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see also Kirby v. Dutton*, 794 F.2d 245, 246 (6th Cir.1986).

## CLAIMS EIGHT AND FIFTEEN

In claims eight and fifteen, petitioner again asserts that he was denied access to the courts, based upon the alleged mistreatment by prison officials and prosecutorial misconduct. To the extent that petitioner raises an allegation regarding mistreatment by prison officials, unconnected to his conviction or sentence, such claim is not appropriately considered in these habeas corpus proceedings, but may be considered in an action under 42 U.S.C. §1983.

Where a prisoner is challenging the very fact or duration of his physical imprisonment and the relief that he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a petition for writ of habeas corpus. *Prei ser v.*

37

> *Rodriguez,* 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). However, habeas corpus is not available to prisoners who are complaining only of mistreatment during their legal incarceration. *See Lutz v. Hemingway,* 476 F.Supp.2d 715, 718 (E.D.Mich.2007). Complaints... which involve conditions of confinement, "do not relate to the legality of the petitioner's confinement, nor do they relate to the legal sufficiency of the criminal court proceedings which resulted in the incarceration of the petitioner." *Id.* (quoting *Maddux v. Rose,* 483 F.Supp. 661, 672 (E.D.Tenn.1980)). An inmate ... may, however, bring claims that challenge the conditions of confinement under 42 U.S.C. § 1983. *Id.; see also Austin v. Bell,* 927 F.Supp. 1058, 1066 (M.D.Tenn.1996). ... [C]hallenges [to] ... conditions of his confinement ... "fall outside of the cognizable core of habeas corpus relief." *See Hodges v. Bell,* 170 F. App'x 389, 393 (6th Cir.2006).

*Campbell v. Port Huron County Jail,* 2008 WL 186294 (E.D. Michigan January 22, 2008). To the extent that petitioner appears to again raise claims first presented his motion to withdraw guilty plea, for the reasons already discussed, such claims are procedurally defaulted.

For all the foregoing reasons, petitioner's objections to the Magistrate Judge's *Report and Recommendation* are **OVERRULED**. The *Report and Recommendation* is **ADOPTED** and **AFFIRMED**. Petitioner's motion to amend the petition to delete his unexhausted claims, Doc. No. 42, is **GRANTED**. His request for an evidentiary hearing, Doc. No. 45, is **DENIED**. His request to expand the record to include videotapes allegedly depicting torture by prison officials, Doc. No. 47, is **GRANTED.** This action is hereby **DISMISSED**.

The Clerk shall enter **FINAL JUDGMENT**.

1-26-2009

EDMUND A. SARGUS, JR.
United States District Judge